Filed 1/20/21  Waterhouse Management Corp. v. Allen CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| WATERHOUSE MANAGEMENT CORP. et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>ARTHUR A. ALLEN et al.,<br><br>Defendants and Respondents. | 2d Civil No. B303365<br>(Super. Ct. No. 17CV05698)<br>(Santa Barbara County) |

Appellant Waterhouse Management Corp. is the property manager of Nomad Village Mobile Home Park (the Park), a 150-space mobile home park in Santa Barbara County.  Appellant Lazy Landing MHP, LLC, is the owner of the Park's long-term ground lease.  Appellants filed a complaint against the Park's homeowners (respondents).  Appellants appeal from the trial court's order striking their fourth cause of action as a strategic lawsuit against public participation (SLAPP) pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP statute).  The fourth cause of action alleged that respondents had maliciously

prosecuted an administrative proceeding before the California Public Utilities Commission (PUC).

The trial court granted the anti-SLAPP motion because appellants had failed to show that the prior administrative proceeding had been terminated in their favor. Such a favorable termination is one of the elements of a cause of action for malicious prosecution. Appellants contend that the trial court erred. We disagree and affirm.

*The Administrative Proceeding Underlying Appellants'*
*Fourth Cause of Action for Malicious Prosecution*

Respondents' PUC complaint alleged that appellants had imposed a rent-controlled rental increase to recover costs incurred in abating electrical code violations at the Park. Respondents claimed that appellants were required "to assume responsibility for payment of all abatement costs" and could not pass the costs through to the homeowners. In support of their claim, respondents cited Health and Safety Code section 18420, subdivision (a)(3), which provides, "The owner or operator of the mobilehome park shall be responsible for the correction of any violations for which a notice of violation has been given pursuant to this subdivision." Respondents requested that the PUC (1) answer four questions relating to the controversy, and (2) instruct appellants to rescind the rental increase and refund amounts collected pursuant to the increase.

In their answer to the complaint, appellants contended that the matter was not properly before the PUC because the validity of the rental increase was being litigated in an arbitration proceeding under the Santa Barbara County Mobilehome Rent Control Ordinance (the Ordinance). Appellants argued that the existence of both the PUC and arbitration proceedings "runs the

2

risk of inconsistent results and/or piecemeal adjudication of issues.  Accordingly, [the] Complaint cannot and should not proceed in light of [respondents'] other action pending . . . ."  Appellants also maintained that the PUC "lacks jurisdiction over the subject matter" because the rental increase issue arises under the Ordinance "and is not a matter arising under the [PUC] law."

In its decision the PUC noted that the arbitrator had upheld appellants' rental increase and that respondents had requested review of the arbitrator's ruling by the Board of Supervisors of Santa Barbara County.  Respondents "assert[ed] that any ruling by the Board of Supervisors may be appealed by way of an administrative writ of mandate to the Santa Barbara County Superior Court."

For several reasons, the PUC dismissed respondents' complaint without prejudice.  The first reason was that the complaint was "not ripe for resolution because the factual record [was] not complete."  The PUC explained:  "Since the current status of the Rent Control Arbitration Proceeding, and what was ultimately resolved, remains unclear, the [PUC] is not in a position to determine if the relief [respondents] are seeking in this proceeding is duplicative of the relief [they] sought in the Rent Control Arbitration Proceeding. . . . [The PUC] will not endeavor to resolve a dispute based on a partial record."  "Until there is a complete record as to the final resolution of the Rental Control Arbitration Proceeding, there is no apparent current need for the [PUC] to interject itself into this proceeding."

The second reason was that "the complaint seeks a combination of impermissible advisory and declaratory opinions." (Bold and Capitalization omitted.)  The complaint "asks a series of four questions that seek either advice or declaratory

3

determination, but does not set forth [respondents'] positions and the applicable law that supports each position. . . . [¶] . . . [T]he [PUC] has dismissed complaints that sought similar advisory opinions."

The PUC advised respondents as to how they might revise the first question so that it would not constitute a request for an impermissible advisory opinion. The first question asked, "Does [PUC] jurisdiction pre-empt state law requiring management to assume responsibility for all code violation abatement costs, including common area costs?" The PUC suggested: "[Respondents] should state if they contend this is a case of [PUC] preemption of state law and set forth the authorities [that] support that position. [Respondents] should also state why they are raising a question of [PUC] preemption if, as they have claimed, the issues before the [PUC] are different than the issues before the Rent Control Arbitration Proceeding."

As to respondents' three remaining questions, the PUC said they are "problematic" because "[t]hey are phrased in a manner that asks the [PUC] to determine the parties' rights i.e. declaratory relief." "[Respondents] need to revise their complaint and clearly set forth their positions on each of these three questions with the appropriate support[ing] legal authorities cited."[1]

---

[1] The three remaining questions were: "[1]. Are attorney and professional fees relating to submetered utilities included in 'administrative and general expenses' for the purposes of [PUC Decision] 0404043, Attachment A? [¶] [2]. Is a replacement service extension to upgrade a space serviced for 50+ years considered 'expansion of the network for areas yet to be serviced by the utility'? [¶] [3]. Are costs – including, but not limited to, engineering and professional fees, permits, and plot plans –

The third reason for dismissing the complaint was that respondents "do not explain why they are entitled to . . . relief [from the rental increase], what law supports their claims, and how the [four] questions [asked] support their claims for relief. Furthermore, [respondents] fail to square their request with the fact that Attachment A to [PUC Decision] 04-04-043 vested the authority to local rental boards to rule on costs passed through to tenants via rental increases."

The PUC said that a refiled complaint must (1) provide "a complete recounting" of all events relating to the arbitration proceeding; (2) not include a request for an advisory or declaratory opinion; (3) "[e]xplain, in detail, how [the] complaint before the [PUC] is distinct from the Arbitration Proceedings"; and (4) "[e]xplain, in detail why the [PUC's] Decision 04-04-043, Attachment A, doesn't preclude [respondents] from challenging, before the [PUC], the rental increases that are the subject of the instant complaint." Respondents did not refile their complaint.

*Elements of Cause of Action for Malicious Prosecution*

"To establish a cause of action for malicious prosecution, a plaintiff must demonstrate that the prior action (1) was initiated by or at the direction of the defendant and *legally terminated in the plaintiff's favor*, (2) was brought without probable cause, and (3) was initiated with malice." (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 740 (*Siebel*), italics added.) "[A]n action for malicious prosecution may [as here] be founded upon the institution of a proceeding before an administrative agency." (*Hardy v. Vial* (1957) 48 Cal.2d 577, 581.)

---

relating to the electric and gas submetered system included in 'administrative and general expenses' for the purposes of [PUC Decision] 0404043, Attachment A?"

5

*Malicious Prosecution: Element of*
*Termination in Plaintiff's Favor*

"'"'The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort [of malicious prosecution]." [Citation.]  Thus, "[i]t is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior . . . proceeding of which he complains terminated in his favor." [Citation.]'  [Citation.]"  (*Siebel, supra*, 41 Cal.4th at p. 741.)

"To determine whether a party has received a favorable termination, we consider "'the judgment as a whole in the prior action . . . .'" [Citation.]'  [Citation.]  Victory following a trial on the merits is not required.  Rather, "'the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." [Citation.]'  [Citation.]"  (*Siebel, supra*, 41 Cal.4th at p. 741.)

"'If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution.'  [Citation.]  Thus, a 'technical or procedural [termination] as distinguished from a substantive termination' is not favorable for purposes of a malicious prosecution claim.  [Citation.]"  (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 342 (*Casa Herrera*).)  For example, "a dismissal for lack of jurisdiction does not involve the merits and cannot constitute a favorable termination."  (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 882.)

"When the proceeding terminates other than on the merits, the court must examine the reasons for termination to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed.  If resolution of the underlying action leaves a residue of doubt about the plaintiff's innocence or liability, it is not a favorable termination sufficient to support a cause of action for malicious prosecution." (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1149 (*Sierra Foundation*).)

*The Anti-SLAPP Statute*

"A SLAPP suit . . . seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances.  [Citation.]  The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056.)

"'To prevail on an anti-SLAPP motion, the movant must first make "'a threshold showing that the challenged cause of action' arises from [protected activity] in connection with a public issue [the first prong]." [Citation.]  Once the movant meets this burden, the plaintiff must demonstrate "'a probability of prevailing on the claim [the second prong].'" [Citation.]  If the plaintiff cannot meet this burden, the trial court must strike the cause of action.  [Citation.]'" (*Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 80.)

Here, we are concerned only with the second prong.  Appellants do not contend that respondents failed to make the threshold showing required under the first prong.

*Appellants Did Not Demonstrate a Probability of*
*Satisfying the Favorable Termination Element*

The PUC's order dismissing the complaint without prejudice did not satisfy the requirement that "'"the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit." . . . '" (*Siebel, supra*, 41 Cal.4th at p. 741.) The gravamen of respondents' complaint was that appellants had improperly passed through to the homeowners the cost of abating electrical code violations. The termination of the administrative proceeding cannot reasonably be interpreted as exonerating appellants from this alleged misconduct. The PUC concluded that the complaint "is not properly phrased and prevents the [PUC], at present, from making *any decisions regarding its purported merits*." (Italics added.) The PUC also concluded that "the complaint is not ripe for resolution because the factual record is incomplete." The PUC permitted respondents to refile the complaint provided that they "cure all of the deficiencies identified [by the PUC] in [its] decision." The PUC did not opine that the deficiencies were incurable.

Thus, the complaint was dismissed for procedural, not substantive reasons. A "procedural [termination] as distinguished from a substantive termination' is not favorable for purposes of a malicious prosecution claim." (*Casa Herrera, supra*, 32 Cal.4th at p. 342.) The termination here "leaves a residue of doubt about [appellants'] innocence or liability" and therefore "is not a favorable termination sufficient to support a cause of action for malicious prosecution." (*Sierra Club Foundation, supra*, 72 Cal.App.4th at p. 1149.) Accordingly, appellants failed to satisfy their second-prong burden under the anti-SLAPP statute of

demonstrating a probability that they would prevail on the fourth cause of action for malicious prosecution.

*Disposition*

The order granting respondents' special motion to strike the fourth cause of action under the anti-SLAPP statute is affirmed.  Respondents shall recover their costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


YEGAN, J.


We concur:


GILBERT, P. J.


PERREN, J.

9

Pauline Maxwell, Judge

Superior Court County of Santa Barbara

_____

James P. Ballantine and Betty L. Jeppesen, for Plaintiffs and Appellants.

Allen, Semelsberger & Kaelin, James C. Allen and Jessica S. Taylor, for Defendants and Respondents.